Michael H. Bunis (*pro hac vice application forthcoming*)
    mbunis@choate.com
Justin Wolosz (*pro hac vice application forthcoming*)
    jwolosz@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248-5000
Facsimile: (617) 248-4000

Ronald J. Nessim - State Bar No. 94208
    rnessim@birdmarella.com
David H. Chao - State Bar No. 273953
    dchao@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Brooks Automation, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BROOKS AUTOMATION, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>PTB SALES, INC., a California corporation,<br><br>    Defendant. | CASE NO. 2:17-cv-3880<br><br>**COMPLAINT FOR MONEY DAMAGES AND EQUITABLE RELIEF FOR:**<br><br>**(1) Copyright Infringement (17 U.S.C. § 501)**<br><br>**(2) Trademark Infringement (15 U.S.C. § 1114)**<br><br>**(3) Common Law Trademark Infringement**<br><br>**(4) Misappropriation of Trade Secrets (Cal. Civ. Code § 3426)**<br><br>**(5) Conversion**<br><br>**(6) Unfair Competition (15 U.S.C. § 1125(a))**<br><br>**(7) Unfair Business Practices and Unfair Competition (Cal. Bus. & Prof. Code § 17200 et seq.)**<br><br>**DEMAND FOR JURY TRIAL** |

3395659.1

COMPLAINT

# COMPLAINT

Plaintiff Brooks Automation, Inc. ("Brooks"), by its undersigned counsel, brings this action for preliminary and permanent injunctive relief, monetary damages and restitution, and alleges as follows:

## INTRODUCTION

1.     Brooks has commenced this lawsuit in order to stop, and attempt to mitigate damage caused by, the ongoing string of unfair, deceptive and illegal actions undertaken by defendant PTB Sales, Inc. ("PTB"), as part of its unlawful scheme to attract customers to its business refurbishing and servicing Brooks' products.

2.     Brooks is a leading worldwide provider of sophisticated automation and cryogenic solutions.  The term "cryogenic solutions" refers to a combination of products and processes, including hardware, operating software (sometimes referred to as "firmware"), and methods, that are used to generate cryogenic temperatures in order, for example, to produce high-vacuum environments in an enclosed space. Cryogenic technology is critical in a number of industries, including the manufacturing of semiconductors.  Since 1978, Brooks has been a leading partner to the global semiconductor manufacturing market.

3.     Brooks has worked hard and made major investments to build its brand, not only through the delivery of industry-leading technology and products, but also through its superior, global service capabilities and its dedicated focus on product education and training, all of which are designed to help customers get the most from their investment in Brooks' products.

4.     PTB holds itself out as a "provider of Refurbished Vacuum Pumps and Vacuum Pump Repair services to the Semiconductor Fabrication, PV Solar, Nano-Technology, MEMS, Vacuum Coating, Aerospace and Defense, Research and Development and General Industrial industries."   PTB does not manufacture cryopumps or own intellectual property in the cryopumps it services.  Instead, PTB

services cryopumps that were manufactured by others, commonly referred to as the Original Equipment Manufacturers, or "OEMs."  PTB specifically holds itself out as qualified to service and refurbish, among other things, Brooks' product line of CTI-Cryogenics cryopumps, including On-Board products.  In this regard, PTB competes with Brooks in the area of servicing and refurbishment of Brooks' products.

5.      PTB's decision to create a business servicing products manufactured by Brooks is not remarkable.  What is remarkable is that, rather than compete for customers legitimately and honestly, PTB has chosen to pursue unfair, deceptive, and illegal strategies, all in an attempt to gain an unfair advantage and win business that it could not otherwise command.  PTB's improper methods – at least those that Brooks has been able to uncover thus far, without the benefit of discovery – can loosely be grouped into two categories.

6.      First, PTB has violated copyright, trade secret, and other legal rights held by Brooks in order to provide services that PTB has no legal authority to provide.  Notably, PTB has hired a number of former Brooks employees.  Although these employees remain subject to confidentiality obligations imposed by confidentiality agreements and the law, on information and belief PTB is using knowledge gained by these employees during their time with Brooks in order to violate Brooks' intellectual property and other rights so that it can enhance the offerings it provides to customers and attract more business.

7.      For example, on information and belief, PTB has acquired firmware from Brooks' products that is not available to the public, which it unlawfully copies and distributes to PTB customers.  Brooks has examined its products that have been serviced by PTB, and observed versions of Brooks' proprietary and copyrighted firmware that are newer than (i.e., updated from) the versions Brooks previously installed on these same products.  PTB has also included in its advertising materials a number of unpublished firmware commands that are not visible on Brooks' products themselves and are protected as Brooks' trade secrets, suggesting that PTB

makes use of these unpublished commands when it services Brooks' products. On information and belief, the copying, upgrading and manipulation of Brooks' firmware is all part of PTB's attempt to provide repair and refurbishment services that are "as good as" those provided by Brooks – even though PTB has no authority or legal right to distribute or manipulate Brooks' proprietary, copyrighted software in this manner.

8.     In addition, Brooks recently learned that PTB wrongfully acquired, and is using, a proprietary, internal-use-only Brooks' On-Board Simulator device in connection with its repair and refurbishment services of Brooks' products. Brooks never authorized PTB to possess this simulator, much less make use of it in advertising materials or to service Brooks' pumps in an unlawful and misleading manner.

9.     The second category of PTB's improper actions involves PTB's attempts to deceive, and actual deception of, customers by implying that it has partnered with Brooks and been granted some kind of preferred status, in order to suggest to potential customers that it can perform repair and refurbishment services on the cheap that are as high quality as services provided by Brooks. For example, PTB's website touts that it has "solid relationships with many equipment OEMs. As a result we can deliver vacuum pump repair service to our customers that are equivalent to those they could receive from an OEM but at a much more affordable price level." PTB's website then has an entire page dedicated to Brooks CTI-Cryogenics products including On-Board pumps, with photographs posted of Brooks' products and descriptions that boast about their quality. Clicking through to more detailed pages, PTB then makes claims that (for example) it is "the only independent that can fully refurbish" certain of Brooks' products.

10.     The collective statements on PTB's website improperly suggest that PTB is an agent or authorized servicer of Brooks' products. But PTB does not stop there; its inaccurate suggestion of some link with Brooks carries over to its actions

with respect to product services as well.  For example, as detailed below, when PTB services or refurbishes Brooks' products it surreptitiously scrapes off or otherwise removes Brooks' OEM labels, and affixes different ones.  These new, unauthorized labels have PTB's logo, telephone, fax and website information and, although much of Brooks' information is omitted, the new labels include the Brooks' trademarked product names, serial numbers, patent numbers and part numbers.

11.    The transparent goal of these and other statements and actions by PTB is to confuse customers into believing that PTB is somehow affiliated with Brooks, and that PTB can service or "remanufacture" products in some fashion that is authorized or approved by the OEM, even though Brooks had no part in the process and PTB's actions actually violate Brooks' rights and the law.

12.    As a result of PTB's collection of unlawful, unfair, deceptive and illegal actions, in violation of Brooks' intellectual property and other rights, PTB improperly portrays to customers that they can have their Brooks products serviced or refurbished by PTB and achieve the high level of quality that Brooks provides, at a lower cost.  PTB is stealing business from Brooks, and diminishing Brooks' brand recognition and goodwill, through these unlawful and unfair means.  Brooks brings this lawsuit to put an end to PTB's illegal conduct, and attempt to remedy, or at least mitigate (to the extent possible), the harm that PTB continues to inflict.

## PARTIES

13.    Plaintiff Brooks is a Delaware corporation with its principal place of business at 15 Elizabeth Drive, Chelmsford, Massachusetts. Brooks is a leading, worldwide provider of automation and cryogenic solutions.

14.    Upon information and belief, Defendant PTB is a California corporation with its principal place of business at 1331 Mountain View Circle, Azusa, California.  PTB is engaged in, among other things, the provision of vacuum pump repair services, and offering for sale refurbished vacuum pumps.

## JURISDICTION AND VENUE

15.   This is an action for trademark infringement under the Lanham Act, Title 15 of the United States Code; copyright infringement under the Copyright Act of 1976, as amended, Title 17 of the United States Code; and under the statutory law and common law, including the law of the state of California.   This Court has subject matter jurisdiction over Brooks' trademark and copyright claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

16.   This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Brooks and PTB and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17.   This Court has personal jurisdiction over PTB because, among other things, PTB is a California corporation that resides and transacts business in this district and engaged in acts and practices complained of within this district.

18.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2) and (3) and 1400 because PTB resides and may be found in this district, a substantial portion of the events or omissions giving rise to the claims occurred in this district, and PTB is subject to this Court's personal jurisdiction with respect to this civil action.

## FACTUAL ALLEGATIONS

### Brooks' Relevant Products and Services

19.   As stated above, Brooks is an innovator in the field of automation and a leading provider of solutions for multiple markets, including (among others) cryogenic high-vacuum technology.   Brooks' CTI-Cryogenics "cryopumps" are used to create high-vacuum environments for critical processes in a wide range of applications within the semiconductor, industrial and research markets.

20.     On or about July 11, 2005, Brooks merged with Helix Technology Corporation ("Helix"), which was itself a global leader in the development and application of innovative solutions in the field of vacuum technology.[1]  As a result of that merger, Helix employees became Brooks employees, and Brooks acquired the rights to all Helix intellectual property.  In particular, Brooks acquired the rights to Helix's "On-Board" line of cryopump products, and all associated intellectual property.

21.     Brooks is the original equipment manufacturer ("OEM") of its cryopumps, some of which it sells under the ON-BOARD® trademarked product name.  Brooks sells both an On-Board cryopump, and a newer generation cryopump called the On-Board IS cryopump (collectively, the "On-Board Cryopumps").

22.     The On-Board Cryopumps include Brooks' proprietary, copyrighted firmware ("Cryopump Software").

23.     Brooks is the legal and beneficial owner of the copyright of the Cryopump Software.  Brooks has copyrighted and registered with the United States Copyright Office version 2.4 of its Cryopump Software (which version is included in all subsequent versions), registration number TX0008341714, in full compliance with the Copyright Act.

24.     At all relevant times, Brooks has been and remains the owner of the exclusive rights to reproduce and distribute, and to authorize the reproduction and distribution of, the Cryopump Software.  The Cryopump Software is not publicly available nor otherwise legally available to unlicensed third parties.  Upon purchase of a Brooks cryopump, Brooks customers enter into purchase and software license agreements with Brooks.  Such agreements expressly limit access to the software to authorized employees of the customer, and expressly prohibit the sale, assignment,

---

[1] Unless otherwise indicated, "Brooks" as used hereinafter refers collectively to both Brooks and Helix.

transfer, copying or sublicense of the Cryopump Software (subject to a single exception not relevant here).

25. Brooks also offers sales, repairs and refurbishment services for its On-Board Cryopumps. In connection with those services, Brooks has developed an "On-Board Simulator." When a module from an On-Board Cryopump is inserted, the On-Board Simulator mimics application conditions so that the module can be tested without the cryopump hardware itself operating. For example, the Simulator can confirm that the cryopump module will operate as intended to open and close valves and change cryopump heater settings. Using the Simulator, tests may be run in a matter of minutes – rather than the hours it would take to run the same tests using the cryopump hardware itself.

26. Brooks developed the On-Board Simulator solely for its internal use in its engineering labs. It has built approximately thirty such Simulators.

### Brooks' Trade Secrets and Confidential Information

27. To maintain its competitive advantage, Brooks expends significant resources developing, refining and safeguarding its collection of confidential information and trade secrets. Such information includes, without limitation, the Brooks software described herein. This information is competitively sensitive, highly confidential and owned by Brooks. It derives independent economic value by virtue of not being known to the general public or to Brooks' competitors – including PTB – who could obtain substantial economic value from its disclosure or use. It would lose its value if it were made public.

28. Brooks' trade secrets include information related to Cryopump Software ("Cryopump Software Secrets"). The Cryopump Software source code, for example, is not publicly available. Moreover, the Cryopump Software cannot be installed on a cryopump, or updated to a later version, without the use of Brooks' confidential processes. Brooks also maintains as trade secrets certain "unpublished"

WinTalk command codes that permit Brooks to manipulate the Cryopump Software in order to service, evaluate and refurbish its On-Board cryopumps.

29.   Brooks' employees are entrusted with access to various types of Brooks' confidential information and trade secrets, including the above-described Cryopump Software Secrets, depending on their role within the company.  Brooks' employees are required to sign non-solicitation and confidentiality agreements with Brooks, which set out, in no uncertain terms, the protection necessary for Brooks' confidential information and trade secrets.

30.   Brooks takes numerous other reasonable and exceptional steps to safeguard the secrecy of its confidential information and trade secrets, including requiring customers and partners to sign non-disclosure agreements, password-protecting its computer systems, restricting file and drive access, restricting access to information based on an employee's role within the company, and employing various physical security measures at its facilities, including its headquarters in Chelmsford, Massachusetts, at which all visitors must sign in and sign a non-disclosure agreement, all visitors are escorted, and unauthorized photography is prohibited.

**PTB's Misappropriation and Copyright Infringement of the Cryopump Software**

31.   When Brooks refurbishes cryopumps, it generally updates the embedded Cryopump Software to a current version.  Because the Cryopump Software is proprietary to Brooks, and a proprietary methodology is needed to update the software, Brooks is the only company who can rightfully update the Cryopump Software.

32.   On information and belief, PTB unlawfully copies or otherwise distributes copies of Cryopump Software to customers.  Brooks' personnel have viewed numerous On-Board Cryopumps that were serviced by PTB, and which contain updated software that Brooks did not install.  For example, Brooks' personnel have observed cryopumps that were running a prior version of the

9

Cryopump Software in 2010, and then a later version of the Cryopump Software in 2015, even though Brooks did not service the pumps during the period of 2010 to 2015.   During that period, on information and belief, PTB serviced these cryopumps.

33.   By updating the Cryopump Software on Brooks' On-Board Cryopumps, PTB is infringing Brooks' copyright in the Cryopump Software.   PTB is neither a licensee of the Cryopump Software nor has PTB been authorized by Brooks to access, copy or distribute the software.

34.   By the same and other conduct, PTB, on information and belief, is misappropriating Brooks' trade secrets and confidential information.   The installation or updating of software on an On-Board Cryopump requires use of Brooks' trade secrets and confidential information, including the above-described Cryopump Software Secrets.

35.   Brooks recently discovered further evidence that PTB is misappropriating Brooks' Cryopump Software Secrets.   PTB has posted on its website a video, approximately six minutes long, titled "Cryopump Remanufacturing Facility."   *See* www.ptbsales.com/cryopump-repair-service.   The video advertises PTB's repair and refurbishment services for Brooks On-Board Cryopumps.

36.   At the 4:19 mark of the video on PTB's website, the following image appears:

37.    The image shows a software interface that PTB uses in repairing and refurbishing Brooks On-Board Cryopumps.  Particularly noteworthy are the testing commands visible at the bottom.  On information and belief, at least four of those commands – "Extract User Data," "Zero Hours," "Clear History," and "Default Curves" – require unpublished Brooks WinTalk command codes to execute.  These command codes constitute Brooks' trade secrets and confidential information.

38.    On information and belief, one of the many former Brooks/Helix employees who subsequently joined PTB wrongfully retained or acquired the Cryopump Software Secrets.   By using the Cryopump Software Secrets in connection with its "remanufacturing" services, PTB is misappropriating Brooks' trade secrets.

### PTB's Conversion of the On-Board Simulator

39.    Brooks recently learned that PTB is unlawfully in possession of a proprietary, internal-use-only On-Board Simulator.

40.     This, too is revealed by the above-described video on PTB's website. At the 3:30 mark of the video, after a slide titled "Electronics Module Sub-Assembly," the following image appears (cropped from a larger image):



41.     That image shows a Brooks proprietary On-Board Simulator.   The Simulator is the device housed at the bottom of the two-level unit on the right of the image.   Here, for comparison, is an image of an On-Board Simulator in a Brooks engineering lab:



Though the CTI-Cryogenics label and certain other Brooks branding has, on information and belief, been removed from the Simulator in PTB's Remanufacturing Facility, the devices are, in substance, identical.

42.     As explained above, Brooks developed the On-Board Simulator for internal use only.  Brooks did not give the Simulator to PTB.  It has never been sold or otherwise made publicly available.   PTB is wrongfully in possession of the Simulator.

43.     Notwithstanding how PTB came into possession of the Simulator PTB is in wrongful possession of Brooks' property.  PTB's subsequent acquisition and use of the Simulator in connection with its On-Board cryopump repair and refurbishment services is unlawful.

### Brooks' Trademark Rights

44.     PTB has also violated Brooks' trademark rights.

45.     Brooks holds registered Marks to CTI-CRYOGENICS® and ON-BOARD® (hereinafter, the "Registered Marks").

46.     On or about July 22, 1983, Helix filed an application with the U.S. Patent and Trademark Office ("PTO") seeking to register the Mark CTI-CRYOGENICS®.  On April 30, 1985, the PTO issued a Certificate of Registration to Helix registering the trademark in connection with cryogenic refrigerators, cryopumps systems and refrigerator systems.  A copy of this registration, reflecting the current ownership of the CTI-CRYOGENICS® mark by Brooks, is attached as Exhibit A.

47.     On or about February 12, 1990, Helix filed an initial application with the PTO seeking to register the mark ON-BOARD® in connection with cryopumps and controls therefor.   On January 29, 1991, the PTO issued a Certificate of Registration to Helix registering the trademark.  On or about June 20, 1994, Helix filed a subsequent application with the PTO seeking to register the mark ON-BOARD® in connection with vacuum pumps, vacuum and electronic controls therefor.  On July 18, 1995, the PTO issued a Certificate of Registration to Helix registering the trademark.   Copies of these registrations, reflecting the current ownership of the ON-BOARD® Mark by Brooks, are attached as Exhibits B and C.

48.    The ON-BOARD® Mark is registered around the world including in the United States, Benelux, Canada, France, United Kingdom, Germany, Italy, Japan, Switzerland, Taiwan, Singapore and China.

49.    Brooks has continually, without interruption, marketed products under the CTI-CRYOGENICS® and ON-BOARD® Marks, beginning well before the registration dates listed above.  Brooks has used the Registered Marks to identify and promote its products and to distinguish its products from those offered by others.    Among other things, Brooks' company website, product labels, and advertising and promotional materials, identify and use the CTI-CRYOGENICS® and ON-BOARD® Marks.

50.    Over the years and as a result of its substantial promotional efforts, Brooks has become widely known to consumers as the source of products bearing the Registered Marks.  The Registered Marks are widely recognized by consumers as being associated with Brooks' high quality products, including cryopumps, and high quality services provided with respect to cryopumps, and have become synonymous with the goodwill and reputation of Brooks.

51.    The Registered Marks are entitled to protection under the Lanham Act.

**PTB's Actions in Further Violation of Brooks' Intellectual Property Rights**

52.    At all times relevant to this complaint, PTB has been aware of the goodwill represented by the Registered Marks and aware that consumers recognize the Marks as identifying the products of Brooks, distinguishing Brooks' products from those of others and symbolizing products of the highest quality.

53.    PTB holds itself out as a "provider of Refurbished Vacuum Pumps and Vacuum Pump Repair services to the Semiconductor Fabrication, PV Solar, Nano-Technology, MEMS, Vacuum Coating, Aerospace and Defense, Research and Development and General Industrial industries."   PTB performs refurbishment and/or repair services on Brooks' products, including cryopumps.

54.    In connection with refurbishment and/or repair services, PTB affixes labels to the pumps it has refurbished or repaired that differ from labels affixed by the OEM.  Indeed, PTB actively advertises its refurbishment services in a video on YouTube that includes footage and a voiceover describing the process of affixing a PTB label to the refurbished product.  *See* "PTB Sales' Vacuum Pump Refurbishment Facility," *accessed at* https://www.youtube.com/watch?v=kaK9N_JT0dk.

55.    PTB has affixed its labels ("PTB Labels") on Brooks products that PTB has repaired and/or refurbished, including the ON-BOARD® 400 Cryopump.  For example, Brooks' personnel have observed a Brooks pump from a facility in Torrance, CA on which PTB placed one of its PTB Labels.

56.    PTB has intentionally and willfully adopted and used the Registered Marks on the PTB Labels in a manner that is improper and likely to cause deception and/or confusion.  The following is an example of one of the PTB Labels that Brooks has observed:



57.    The label included in Paragraph 56 shows PTB's logo, telephone, fax and website information and a service date.  The label then provides product, serial and patent numbers identifying Brooks' product, and using Brooks' ON-BOARD® Mark without proper attribution.

58.    The following is another example of one of the PTB Labels that Brooks has observed:



59.     The counterfeit label included in Paragraph 58 includes Brooks' ON-BOARD® Mark, as well as the CTI-CRYOGENICS® Mark (another registered Mark owned by Brooks), without permission.

60.     The PTB Labels are confusing, false and misleading, not only because they violate Brooks' trademark rights, but also because they create the misimpression that PTB is somehow affiliated with Brooks, and because they include misstatements about Brooks' products which Brooks has never approved or adopted.

61.     For example, certain of the PTB Labels include a Restriction of Hazardous Substances ("RoHS") certification logo.  Brooks does not include the RoHS certification logo on the relevant product's Brooks Service Label, because the pump is not RoHS certified.

62.     PTB Labels also include Intertek's ETL Mark ("ETL").  Intertek is one of the world's largest testing, inspection and certification companies.  The logo is meant to indicate proof of product compliance to North American safety standards. Brooks pays Intertek an annual fee for permission to include the ETL on Brooks'

1   Service Labels.  Brooks is provided with a unique number specific to Brooks.  This

2   number, 74604, along with the ETL logo, are included on Brooks' Service Labels.

3       63.     The PTB Labels observed by Brooks personnel list product and serial

4   numbers which include the ETL logo but fail to list an Intertek unique number.

5   Upon information and belief, based on a search at Intertek's website, PTB does not

6   subscribe to Intertek for use of the ETL Mark.

7       64.     PTB's adoption and use of the Marks was and is intentional and

8   deliberate and designed to trade-off of and take unfair advantage of the goodwill and

9   reputation of Brooks.

10              **FIRST CAUSE OF ACTION**

11      **(Copyright Infringement in Violation of 17 U.S.C. § 101 et seq.)**

12      65.     The allegations of the preceding paragraphs are incorporated by

13   reference as is set forth fully herein.

14      66.     Brooks is the sole owner of all right, title and interest in the Brooks

15   Cryopump Software.

16      67.     Brooks has complied fully with the Copyright Act, 17 U.S.C. § 101 et

17   seq., and has secured copyright registration for the Cryopump Software.

18      68.     Brooks has not authorized PTB to reproduce, copy, adapt, distribute or

19   otherwise display any version of the Cryopump Software.

20      69.     PTB has unlawfully reproduced, copied, adapted, distributed or

21   otherwise displayed the Cryopump Software.

22      70.     PTB's acts, as alleged herein, are infringements of Brooks' copyrights.

23   PTB's infringing activities are continuing, willful and intentional, in disregard of

24   Brooks' rights.

25      71.     Brooks has sustained, and will continue to sustain, substantial injuries,

26   loss and damage to its exclusive rights under the copyright laws regarding the

27   Cryopump Software, and will continue to sustain damages from the loss of value of

28   the exclusive rights thereunder by PTB's conduct.  As a result of this conduct,

Brooks is entitled to recover damages and profits pursuant to 17 U.S.C. § 504(b), statutory damages pursuant to 17 U.S.C. § 504(c), and attorney fees and costs pursuant to 17 U.S.C. § 505.

72.     PTB continues to infringe Brooks' copyrights, causing Brooks irreparable harm.  Unless enjoined by order of this Court, PTB will continue to infringe Brooks' copyrights, and continue to cause such irreparable harm.

## SECOND CAUSE OF ACTION

### (Federal Trademark Infringement in Violation of 15 U.S.C. § 1114)

73.     The allegations of the preceding paragraphs are incorporated by reference as if set forth fully herein.

74.     Brooks exclusively owns the Registered Marks, which are valid and enforceable.

75.     Brooks used the Registered Marks in interstate commerce in connection with the advertising and promotion of its products and services, prior to the use by PTB of the Marks.

76.     Without authorization, PTB has used the Registered Marks and logos, including in interstate commerce, in connection with its resale and servicing of Brooks' products.

77.     PTB's purpose and intent in using the Registered Marks, with full knowledge of Brooks' prior rights therein, was and is to deceive consumers.  PTB has acted in bad faith and/or willfully in connection with these actions.

78.     PTB's unauthorized use of the Registered Marks and logos has caused, and will likely continue to cause, confusion, mistake or deception in the relevant consumer market unless PTB is permanently enjoined.

79.     Brooks has suffered and will continue to suffer injury and damages as the result of PTB's acts and practices as set forth above.

80.     PTB's infringing acts have caused and will continue to cause Brooks to suffer irreparable injury, including injury to its reputation and goodwill.  Brooks

does not have an adequate remedy at law to recover for this harm, and is therefore entitled to preliminary and permanent injunctive relief.

## THIRD CAUSE OF ACTION

### (Common-Law Trademark Infringement)

81.    The allegations of the preceding paragraphs are incorporated by reference as if set forth fully herein.

82.    The acts of PTB, complained of above, constitute trademark infringement in violation of the common law of the State of California.

83.    PTB's acts have been committed and are being committed with the deliberate purpose and intent of appropriating and trading on Brooks' goodwill and reputation.

84.    As a result of the foregoing acts of PTB, Brooks has suffered both actual and statutory damages.

85.    PTB's actions have caused and will continue to cause Brooks to suffer irreparable injury, including injury to its reputation and goodwill.  Brooks does not have an adequate remedy at law to recover for this harm, and is therefore entitled to preliminary and permanent injunctive relief.

## FOURTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets in Violation of the California Uniform Trade Secret Act, Cal. Civ. Code § 3426)

86.    The allegations of the preceding paragraphs are incorporated by reference as if set forth fully herein.

87.    As a result of the conduct described above, PTB has misappropriated Brooks' trade secrets, including, but not limited to, the above-described trade secrets embodied in the Cryopump Software, associated command codes, and confidential methods and processes.  The information is confidential, competitively sensitive, and owned by Brooks.  It has independent economic value by virtue of not being known to the public and to Brooks' competitors.

88.     As explained above, Brooks takes, and at all relevant times has taken, reasonable steps to safeguard the secrecy of its trade secrets.

89.     PTB used and disclosed Brooks' trade secrets without Brooks' express or implied consent.

90.     PTB acquired Brooks' trade secrets through improper means – including, on information and belief, a former Brooks employee – and/or knew or should have known that the trade secrets were acquired by improper means.

91.     As a result of PTB's misappropriation of Brooks' trade secrets, Brooks has suffered and will continue to suffer actual and irreparable harm and money damages, including actual loss.

## FIFTH CAUSE OF ACTION

### (Conversion)

92.     The allegations of the preceding paragraphs are incorporated by reference as if set forth fully herein.

93.     Brooks owned and/or had a right to possess the On-Board Simulator at the time PTB converted it.

94.     PTB converted the On-Board Simulator by a wrongful act, and acquired and has used the On-Board Simulator without legal authority.

95.     As a result of PTB's misappropriation of the On-Board Simulator, Brooks has suffered and will continue to suffer actual and irreparable harm and money damages, including actual loss.

## SIXTH CAUSE OF ACTION

### (Federal Unfair Competition in Violation of 15 U.S.C. § 1125(a))

96.     The allegations of the preceding paragraphs are incorporated by reference as if set forth fully herein.

97.     Brooks' Registered Marks have become uniquely associated with and identify Brooks as the manufacturer and servicer for its cryopumps.

98.   PTB's activities as set forth above, including its deliberate, willful and unauthorized use of the Registered Marks in connection with its resale and servicing of Plaintiff's products, constitute a false designation of origin, a false or misleading description of fact, and/or false or misleading representation of fact, and have caused and are likely to cause confusion, mistake, and/or deception, including with respect to:

a)   A false affiliation, connection or association of Brooks trademarks and products with PTB;

b)   The origin, sponsorship or approval of PTB's use of Brooks' trademarks; and

c)   The nature, characteristics, or qualities of PTB's services and/or rendering of services in connection with the Brooks' trademarks.

99.   The foregoing acts constitute unfair competition in violation of 15 U.S.C. § 1125(a).

100.   Brooks has suffered and will continue to suffer injury and damages as the result of PTB's acts and practices as set forth above.

101.   PTB's actions have caused and will continue to cause Brooks to suffer irreparable injury, including injury to its reputation and goodwill.  Brooks does not have an adequate remedy at law to recover for this harm, and is therefore entitled to preliminary and permanent injunctive relief.

## SEVENTH CAUSE OF ACTION

**(Unfair Business Practices and Unfair Competition in Violation of Cal. Bus. And Prof. Code § 17200 et seq.)**

102.   The allegations of the preceding paragraphs are incorporated by reference as if set forth fully herein.

103.   California Business and Professions Code Section 17200, *et seq.*, prohibits any business from engaging in unfair competition, which is defined as any

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.

104.   PTB's actions as alleged above, including its accessing, loading and distributing of Brooks' software without a license, improper use of Brooks' Simulator, and improper use of the Registered Marks and other actions including the application of PTB Labels on Brooks' products, constitute unlawful, unfair or fraudulent business acts or practices for purposes of California Business and Professions Code Sections 17200, *et seq.*

105.   As a proximate result of PTB's improper practices as alleged above, Brooks has lost money or property, including lost profits/business and loss to the value of its exclusive intellectual property rights and goodwill.  As a result of Brooks' actual, economic injury, which was caused by PTB's unfair competition and unfair business practices, Brooks is entitled to restitution and/or a disgorgement of PTB's improper profits.

106.   PTB's actions have caused and will continue to cause Brooks to suffer irreparable injury, including injury to its reputation and goodwill.  Brooks does not have an adequate remedy at law to recover for this harm, and is therefore entitled to preliminary and permanent injunctive relief.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff Brooks Automation, Inc. respectfully requests that this Court enter judgment in its favor and grant preliminary and permanent injunctive relief as follows:

A.   Enter judgment in Brooks' favor on each Count set forth in this Complaint;

B.   Award Brooks damages, disgorgement of profits and/or restitution, in an amount to be proven at trial, caused by PTB's unlawful conduct;

C.   Enter a Preliminary Injunction enjoining PTB, and its officers, agents and employees, and other persons who are in active concert or

participation with them, from (1) unauthorized use and/or distribution of Brooks' confidential information or intellectual property, (2) making any representation that PTB is an authorized seller or servicer of Brooks' products or affiliated with Brooks in any way; (3) accessing or altering software embedded in Brooks' products; (4) the distribution of affixtures without proper attribution to Brooks' name or trademarks;

D.    Enter a Permanent Injunction enjoining PTB, and its officers, agents and employees, and other persons who are in active concert or participation with them, from (1) unauthorized use and/or distribution of Brooks' confidential information or intellectual property, (2) making any representation that PTB is an authorized seller or servicer of Brooks' products or affiliated with Brooks in any way; (3) accessing or altering software embedded in Brooks' products; (4) the distribution of affixtures without proper attribution to Brooks' name or trademarks;

E.    Enter an order directing PTB to return any and all Brooks confidential information and property in its possession, custody or control;

F.    Award Brooks its costs of suit and attorney fees as permitted by applicable law;

G.    Grant Brooks prejudgment and post-judgment interest; and

H.    Award any other remedy and/or relief that the Court deems just and equitable in the circumstances.

DATED:  May 23, 2017

Ronald J. Nessim
David H. Chao
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By: _____/s/ Ronald J. Nessim_____
                Ronald J. Nessim
        Attorneys for Brooks Automation, Inc.

1

## <u>JURY DEMAND</u>

2

Brooks Automation, Inc. demands a trial by jury as to all claims that may be

3

tried to a jury.

4

5   DATED:  May 23, 2017         Ronald J. Nessim
                                David H. Chao
6                               Bird, Marella, Boxer, Wolpert, Nessim,
                                Drooks, Lincenberg & Rhow, P.C.
7

8

9

10                              By:     /s/ Ronald J. Nessim

                                        Ronald J. Nessim
11                              Attorneys for Brooks Automation, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3395659.1